# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rural Arizona Maintenance Specialists LLC, | No. CV-13-02355-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| American Bonanza Gold Corporation, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 83) and Defendants' opposition thereto. For the following reasons, the Court **GRANTS** the motion in part and **DENIES** it in part.

## BACKGROUND

Plaintiff Rural Arizona Maintenance Specialists LLC ("RAMS") entered into a series of contracts with Bonanza Explorations, Inc. ("BEI") to dismantle and remove mining equipment from a mine in Calumet, Michigan and assemble it at the Copperstone Mine near Quartzsite, Arizona ("Calumet Mine Project"). (Pls.' Statement of Facts. Supp. Mot. Summ. J. ("PSOF") ¶ 1 (Docs. 72–82); Defs' Statement of Facts ("DSOF") ¶ 6–8 (Doc. 89).)[1] After RAMS completed the Calumet Mine Project, BEI then hired RAMS as a general contractor to assist it in the development of the Copperstone Mine ("Copperstone Mine Project"). (PSOF ¶ 2; CSOF ¶ 2.) Dozens of unpaid invoices for

---

[1] Defendants have submitted, per Local Rule 56.1(b), a Controverting Statement of Facts ("CSOF") as well as a Separate Statement of Facts ("DSOF"). (Doc. 89.)

...

work performed on the Copperstone Mine Project are at issue ("Invoices"). (*See* PSOF ¶¶ 20, 21, Exs. 6, 7; CSOF ¶¶ 20, 21; DSOF ¶ 24, Ex. 10.) All parties agree that the oral agreements underlying the unpaid Invoices constitute valid contracts ("Oral Contracts") between RAMS and BEI. (PSOF ¶¶ 2–3; DSOF ¶ 16, Ex. 2 ¶ 18.) There are factual disputes, however, as to whether the contractual arrangement between RAMS and BEI may have included other parties.[2]

The Defendants also allege that RAMS had a contractual obligation to provide supporting documents with its Invoices like timesheets, packing slips, and other receipts, which obligation, they allege, RAMS breached. (PSOF ¶ 4, Ex. 3 ¶¶ 10, 11; DSOF ¶¶ 9, 11, 18, Ex. 4.)

In April 2012, BEI and American Bonanza hired J.A. Solari & Partners, LLC ("Solari") to perform an independent accounting of RAMS' Invoices. (PSOF ¶ 9; DSOF ¶ 29.) Solari, at the instruction of Brian Kirwin, American Bonanza's President, compiled a spreadsheet setting out eight categories of issues by which it judged RAMS' Invoices ("Solari Report"). (PSOF ¶ 9; CSOF ¶ 9.) The categories included: (Category 1) No time sheets provided – hours verified to time reader; (Category 2) No time sheet provided – hours not verified to time reader; (Category 3) Hours billed do not agree to time sheets; (Category 4) Time sheets do not agree to time reader; (Category 5) Supporting documents not received or incomplete; (Category 6) Packing slip is missing; (Category 7) Mark-ups in excess of 10%/sales tax; and (Category 8) Costs are over six months old. (PSOF ¶ 9; DSOF ¶ 35, Ex. 11.)

In total, Solari determined that $1,855,919.10 of RAMS' Invoices fell into at least one of the eight categories of deficiencies. (PSOF ¶ 18, Ex. 5; DSOF ¶ 35, Ex. 11.) RAMS argues that none of the Oral Contracts it entered into contemplated the requirements set forth in the Solari Report's eight categories. (PSOF ¶ 9.)

---

[2] BEI contends that only it and RAMS entered into the oral agreements. (DSOF ¶ 17, Ex. 2 ¶ 18.) RAMS, on the other hand, attached Invoices to its moving papers naming BEI, American Bonanza, The Bonanza Explorations Office, and/or Kerr as parties during the relevant time period. (PSOF ¶¶ 3, 29–35; *but see* DSOF ¶¶ 24–25.)

**DISCUSSION**

**I.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Although "[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," and evidence must be authenticated before it

can be considered.[3]  *Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir. 2002).

## II. Application

RAMS seeks summary judgment on the issues of (1) BEI and American Bonanza's liability and damages for breach of contract, or, alternatively, under theories of unjust enrichment and quantum meruit; (2) Kerr's liability for BEI and American Bonanza's debt to RAMS; and (3) RAMS's non-liability on Defendants' counter-claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.  Each of these is discussed in turn below.

### A. BEI's Liability and Damages

In an action for breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of that contract, and resulting damages.  *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ct. App. 2004).  An enforceable contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained."  *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Ct. App. 1983) (citation omitted).  Where the evidence is conflicting or permits more than one inference, the trier of fact must determine whether a contract exists.  *Firchau v. Barringer Crater Co.*, 86 Ariz. 215, 222, 344 P.2d 486, 490-91 (1959).

#### 1. Arizona Prompt Payment Act

Although RAMS flags certain written lump sum contracts in its moving papers, RAMS directs its breach of contract claim solely to the unpaid Invoices at issue. Specifically, RAMS seeks summary judgment on dozens of Invoices it submitted to BEI for work performed on the Copperstone Mine Project.  (*See* PSOF ¶¶ 20, 21; DSOF ¶ 24.) There are factual issues as to who are the parties to these contracts, yet all parties acknowledge that Oral Contracts existed for Invoices between at least RAMS and BEI.

The Arizona Prompt Payment Act ("PPA"), codified in A.R.S. § 32-1129.01

---

[3] *See* Order Granting In Part and Denying Part Defendants' Motion to Strike (Doc. 101) (outlining what evidence the Court may validly consider and what evidence the Court ignores).

- 4 -

1  (2011), establishes a "framework for ensuring timely payments from the owner to the
2  contractor and down the line to the subcontractors and suppliers whose work has been
3  approved." *Stonecreek Bldg. Co. v. Shure*, 216 Ariz. 36, 39, 162 P.3d 675, 678 (Ct. App.
4  2007). To that end, the PPA requires a contractor to timely submit a billing or estimate to
5  the owner covering the work performed during the preceding thirty-day billing cycle, and
6  the owner to make progress payments to the contractor "on the basis of a duly certified
7  and approved billing or estimate of the work performed and the materials supplied"
8  during that period. § 32-1129.01(A). On contracts to which the PPA applies, a
9  contractor's invoice is deemed certified and approved *unless* the owner objects in writing
10 within fourteen days. *Id.* § 32-1129.01(D). Once certified and approved by the absence
11 of any objection, the owner must make a progress payment within seven days. *Id.*
12 Arizona Courts construe the fourteen- and seven-day time limits strictly, noting that the
13 "primary purpose of the [PPA] is to require an owner to identify and disapprove those
14 items that need to be corrected early in the process so that contractors, subcontractors,
15 and suppliers receive prompt payment for their work." *Stonecreek Bldg. Co.*, 216 Ariz. at
16 39. Moreover, if a Court simply allowed a party to withhold payment and object, even in
17 writing, at a point beyond the statutory time limit for "work already completed and
18 deemed approved, the fourteen-day time limit in A.R.S. § 32-1129.01(D) and seven-day
19 time period[] in A.R.S. []§ 32-1129.01(C) . . . become ineffective." *Id.* at 40 (citation
20 omitted).

21     Therefore, once a contractor sends an owner an invoice, the owner must either
22 object to the request for payment in writing pursuant to § 32-1129.01(D) or pay the
23 progress payment within seven days of approval. The rule is clear: an owner may not,
24 even if the owner has legitimate issues with the contractor's performance or otherwise,
25 withhold payment on an invoice while also failing to affirmatively and specifically object
26 to the invoice in writing within fourteen-days of the invoice's receipt. *See id.* at 39–40;
27 *see also Masaryk v. Mendelsohn Constr. LLC*, No. 1 CA-CV 13-0085, 2015 WL
28 1456636, at *4 (Ariz. Ct. App. March 31, 2015).

1    Here, the parties agree that the Oral Contracts and Invoices at issue are governed
2 by Arizona law and therefore the PPA.  Moreover, RAMS raises the PPA as its first basis
3 for relief on the Invoices it submitted to BEI for work it completed on the Copperstone
4 Mine Project.  (MSJ at 6.)  BEI, on the other hand, only raises a defense to PPA *interest*
5 and not to the merits of RAMS' PPA claim itself.  (Response at 4–5 (*citing Slaton Bros.*
6 *SW, LLC v. Bozrah Builders, Inc.*, No. 1 CA-CV 10-0312, 2011 WL 1434683, at *4
7 (Ariz. Ct. App. Apr. 14, 2011) ("We hold that *prejudgment interest* calculated according
8 to the Prompt Pay Act must be calculated on amounts certified as due and owing pursuant
9 to A.R.S. § 32–1129.01(A), minus any amounts a fact finder determines are in excess of
10 what is actually due to the contractor.") (emphasis added)).  Through the Solari Report,
11 BEI argues that RAMS failed to substantiate its Invoices with timesheets and receipts and
12 the Invoices failed to comply with the terms of the Oral Contracts and industry standards
13 with respect to rates, additional taxes/costs, and timeliness.  (DSOF ¶ 26.)  While the
14 Court acknowledges that BEI objected to RAMS' invoices through the 2012 Solari
15 Report, the objections were untimely under the statute.  (*See* DSOF ¶ 9.)  And even
16 assuming BEI justifiably withheld progress payments due to the deficiency of RAMS'
17 Invoices under the terms of the Oral Contracts, *see id.* § 32-1129.01(D), the PPA still
18 required BEI to specifically identify those deficiencies in writing early in the process so
19 that RAMS and its subcontractors could remedy the issue and still receive prompt
20 payment for their work.  *See Stonecreek Bldg. Co.*, 216 Ariz. at 39.

21    § 32-1129.01's statutory scheme required BEI to submit written objections for
22 each insufficient Invoice it received from RAMS within fourteen-days of the Invoice's
23 receipt.  Instead, BEI withheld payment indefinitely and later objected on various
24 grounds via the Solari report.  Notwithstanding the factual disputes that exist over
25 whether RAMS' Invoices met the contractual requirements contemplated by the parties,
26 BEI's failure to timely object eclipses the factual issues and leaves the Court with only
27 one conclusion as a matter of law.  Therefore, the Court GRANTS in part and DENIES in
28 part summary judgment on Count 1 to RAMS' Amended Complaint.

The Court grants summary judgment as to BEI's liability, but denies summary judgment as to the remaining Defendants.  Pursuant to § 32-1129.01(A), the Court awards RAMS the total amount owed to it on all "duly certified and approved" Invoices submitted to BEI and untimely objected to by the 2012 Solari Report.[4]  (*See* PSOF ¶¶ 20, 21, Exs. 6, 7; *see also* DSOF ¶¶ 24, 35, Ex. 10, 11.)  The Court also awards RAMS prejudgment interest in accordance with § 32-1129.01(Q) on the total balance owed to it under § 32-1129.01(A).[5]  *See Slaton Bros. SW, LLC*, 2011 WL 1434683, at *4.  Finally, pursuant to § 32-1129.01(S), the Court will make an award of RAMS' costs and attorney fees against BEI upon RAMS' compliance with LRCiv 54.2.

### 2. Unjust Enrichment & Quantum Meruit

"[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976); *see also USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354, 732 P.2d 579, 584 (Ct. App. 1986) ("[T]he doctrine of unjust enrichment has no application to express contractual situations[;] . . . unjust enrichment is a form of restitutionary relief available upon either 'implied in fact' contract or quasi-contractual grounds.").  However, when one party "breaches the contract by failing to make payments as agreed upon by the parties," the non-breaching party "is entitled to rescind the contract and sue in quantum meruit for the reasonable value of services

---

[4] As is explained below this does not prevent BEI from pursuing its breach of contract claims against the Plaintiff.

[5] During the September 17, 2015 hearing, BEI argued that RAMS charged it "impermissible" amounts connected to insurance premiums and commercial loans.  It is unclear whether RAMS included these "impermissible" amounts in the Invoices at issue, although the Solari Report did not include categories for insurance premiums or commercial loans.  Nonetheless, BEI contends that these "impermissible" charges bar the attachment of prejudgment interest to the Court's PPA award under *Slaton Bros. SW, LLC*.  They do not.  First, to the extent RAMS included these "impermissible" amounts in its Invoices, BEI's objection is untimely and the PPA requires payment on the "duly certified and approved" principal and allows for the addition of prejudgment interest.  *See* §§ 32-1129.01(A), (Q).  Second, if RAMS assessed its insurance expenses or commercial loan interest via means other than through its Invoices, the Court's award under the PPA (and the attached interest) excludes those amounts altogether and thus avoids colliding with the rule espoused in *Slaton Bros. SW, LLC*.

- 7 -

rendered, without the necessity of first fully performing the written contract." *Myers v. W. Realty & Const., Inc.*, 130 Ariz. 274, 276, 635 P.2d 867, 869 (Ct. App. 1981) (citing *Schwartz v. Schwerin*, 85 Ariz. 242, 336 P.2d 144 (1959)).

In this case, the parties do not dispute that multiple valid contracts governed RAMS' work for BEI.  More importantly, the Court granted summary judgment in RAMS' favor holding BEI liable for its unpaid Invoices. *See supra* Part II.A.1.  RAMS may choose at trial to rescind its alleged Oral Contracts with the other Defendants and sue in quantum meruit.  But, unless it does so, there is no further need for the Court to address this argument.  The Court, therefore, DENIES summary judgment on Count 2 and 3 of RAMS' Amended Complaint.[6]

### B.   Kerr's Successor Liability

Disputes of material facts exist as to whether RAMS and American Bonanza ever entered into a contractual relationship pursuant to the Calumet or Copperstone Mine Projects, or whether American Bonanza or other entities are alter egos of BEI. (DSOF ¶ 7.)  These are threshold issue for each of RAMS' theories of successor liability.  Therefore, the existence of these issues of fact precludes the Court from granting summary judgment to RAMS on any of its theories of successor liability.

The Court DENIES summary judgment on Count 4 of RAMS' Amended Complaint.

### C.   Defendants' Counterclaims

Defendants' counterclaims against RAMS are premised on RAMS' alleged failure to satisfy the terms of its Oral Contracts related to its invoicing obligations with BEI.  Although RAMS' PPA claim moves forward notwithstanding RAMS' possible contractual breach with BEI, BEI retains its civil remedies. *See Stonecreek Bldg. Co.*, 216 Ariz. at 40 (citation omitted).  Moreover, in light of the factual disputes over the terms of the Oral Contracts, RAMS failed to meet its burden of proving that no

---

[6] The Court's denial of summary judgment to Count 3 does not prevent RAMS from rescinding its contracts with BEI and seeking quantum meruit equitable relief.

- 8 -

reasonable jury could find that a breach of contract occurred. Granting summary judgment is, therefore, inappropriate on BEI's counterclaim for breach of contract.

The Court also denies summary judgment as to BEI's counterclaim for breach of the covenant of good faith and fair dealing. In this case, even if uncontroverted facts proved that the Oral Contracts between RAMS and BEI did not specify that RAMS must provide supporting documentation, a reasonable jury could still find that submitting invoices without supporting materials breached the duty of good faith and fair dealing. On the other hand, a reasonable jury might also conclude that RAMS' conduct breached the terms of the contracts but did not constitute a breach of the implied covenant. Accordingly, summary judgment is inappropriate on BEI's counterclaim for breach of the covenant of good faith and fair dealing.

Finally, as to BEI's counterclaim for unjust enrichment, where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment does not apply. *Brooks*, 113 Ariz. at 174. The Defendants concede that each of the Invoices at issue here is the subject of a legitimate contract between at least BEI and RAMS. BEI is, therefore, not entitled to recover for unjust enrichment against RAMS.

For the foregoing reasons, the Court GRANTS in part and DENIES in part RAMS' motion for summary judgment on BEI's counterclaims. Specifically, the Court grants summary judgment on BEI's counterclaim for unjust enrichment, and denies summary judgment on BEI's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS HEREBY ORDERED** that Rural Arizona Maintenance Specialists' Motion for Summary Judgment (Doc. 83) is **GRANTED** in part and **DENIED** in part in accordance with the Court's analysis above.

Dated this 23rd day of September, 2015.

_____
Honorable G. Murray Snow
United States District Judge